James **GOLDEN**, Respondent,

v.

**PRESTON TRUCKING COMPANY, INC.**, Appellant.

No. 65253.

Missouri Court of Appeals,
Eastern District,
Division One.

July 19, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 22, 1994.

---

Bradley V. Spaunhorst, St. Louis, for appellant.

Lawrence O. Willbrand, St. Louis, for respondent Golden.

Jeremiah W. (Jay) Nixon, Maria W. Campbell, Asst. Atty. Gen., Jefferson City, for Second Injury Fund.

CRIST, Judge.

Preston Trucking Company (Employer) appeals the decision of the Labor and Industrial Relations Commission (Commission) awarding workers' compensation benefits to James Golden (Claimant). We affirm.

On May 16, 1991, at approximately 1 a.m., Claimant was accidentally injured while working on Employer's loading dock. While boarding a forklift, Claimant's foot slipped and the upper part of his right thigh struck against the brake lever. Although Claimant was in great pain, he continued working until about 4:30 a.m., when he could no longer sit or stand without tremendous pain. Claimant went home and tried to rest but could not get to sleep. He got out of bed and went into the kitchen, where he collapsed on the floor. His wife found him covered in sweat and called an ambulance.

Claimant was kept in the hospital over night for tests. He was released the next day on crutches. He also had a large bruise covering his right groin, buttock, and upper thigh.

At about 4 a.m. the next morning, Claimant got up and went into the kitchen to get some milk. His wife came in and asked him what he was doing. Claimant had trouble understanding his wife and he also had trouble speaking. He went back to bed and when he awoke in the morning, he was able to understand his wife and was able to speak, although at a slower pace.

Claimant's wife phoned Dr. Stegman, Claimant's personal physician, who suggested he come to Alexian Brothers Hospital the following Monday for out-patient tests. After conducting several tests, Dr. Stegman admitted Claimant to the hospital for additional testing. Claimant was then sent to Lutheran Medical Center for a cerebral angiogram. During the angiogram, Claimant lost consciousness and suffered a major stroke. Immediately following the stroke, Claimant suffered numbness in his mouth and fingers and was unable to speak. He has since recovered some speaking ability, although his speech is noticeably impaired. Further, Claimant can no longer read and cannot write anything except his signature. Needless to say, Claimant has not returned to work.

Employer admitted Claimant was accidentally injured while working on May 16, 1991, and Employer paid Claimant $1,192.50 in compensation for the injuries to his back and upper right thigh. However, Employer argued Claimant was not entitled to workers' compensation for the stroke he suffered on May 23, 1991, because there was no causal connection between Claimant's accident and the stroke. The ALJ found in Employer's favor, but the Commission reversed, finding

the work accident either triggered or contributed to the stroke.

Employer now appeals alleging insufficient evidence supports the Commission's finding the stroke Claimant suffered on May 23, 1991, was "medically-causally related to the injury he incurred at work on May 16, 1991."

On appeal, we will affirm the Commission's decision if it is supported by competent and substantial evidence upon the whole record. *Stockman v. J.C. Industries Inc.*, 854 S.W.2d 24, 25[1] (Mo.App.1993). All evidence in the record and all inferences therefrom are to be viewed in the light most favorable to the Commission's award, and we will not substitute our judgment for that of the Commission even if we would have made different findings. *Hutchison v. St. Louis Altenheim*, 858 S.W.2d 304, 305[2] (Mo.App. 1993).

In order to be entitled to workers' compensation, Claimant must have presented sufficient evidence for the Commission to reasonably find a causal connection between the work-related accident and the injury he suffered. *See, Fischer v. Archdiocese of St. Louis*, 793 S.W.2d 195, 198[7] (Mo.App.1990). However, Claimant is not required to show that the work-related accident was the sole, or even primary cause of his injury. *Ford Motor Company v. Dickens*, 700 S.W.2d 484, 486[4] (Mo.App.1985). Rather, it is sufficient to show the accident was " 'an efficient, exciting, superinducing, concurring or contributing cause.' " *Smith v. Cook Paint & Varnish Co.*, 561 S.W.2d 730, 732[1] (Mo.App.1978) *citing, Manley v. American Packing Co.*, 363 Mo. 744, 253 S.W.2d 165, 169[3] (Mo.1952).

The Commission based its finding that Claimant's stroke was caused by his May 16 injury on the testimony of Dr. Camilo Gomez. Dr. Gomez is a board certified neurologist with a subspecialty in the treatment of strokes. He works at the Souers Stroke Institute at St. Louis University Hospital, an institution dedicated to research and treatment of strokes. Further, Dr. Gomez spends 80–90 percent of his time working in the area of strokes.

Claimant was referred to Dr. Gomez by Dr. Wells, the doctor Claimant began seeing after moving to Carlyle, Illinois, following his stroke. Dr. Wells sent Claimant to Dr. Gomez to determine the cause of his stroke and whether he was at risk for future strokes. Dr. Gomez testified he saw Claimant twice and obtained his full medical history. He stated, in his opinion, Claimant's stroke was "caused by some event related to the injury" he sustained at work on May 16, 1991. Dr. Gomez went on to outline the various ways the May 16 accident could have caused the stroke Claimant suffered on May 23, 1991.

Employer argues Dr. Gomez's testimony was insufficient to support the Commission's finding Claimant's stroke was work-related because his testimony was contradictory and was not supported by the evidence. We disagree. Dr. Gomez gave his opinion in response to a lengthy hypothetical question which detailed Claimant's medical condition from the time he was injured at work until the time he suffered the stroke. Dr. Gomez further testified Claimant's smoking and alcohol consumption did not change his opinion as to the cause of the stroke. Although Dr. Gomez was unable to say exactly how Claimant's injury caused the stroke, he did state unqualifiedly, in his expert medical opinion, Claimant suffered the stroke as a result of the injury he incurred at work on May 16, 1991. Even though several doctors testified to the contrary, the Commission stated, "we accept the opinion of Dr. Gomez." The Commission is charged with determining the credibility of all witnesses, and its acceptance or rejection of any expert's testimony will not be disturbed on appeal unless it is against the overwhelming weight of the evidence. *Fischer*, 793 S.W.2d at 199[9]. Point denied.

Judgment affirmed.

REINHARD, P.J., and GARY M. GAERTNER, J., concur.